**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

EQUAL RIGHTS CENTER
11 Dupont Circle NW, Suite 450
Washington, D.C. 20036

and

SYLVESTER FIERS
1301 Belmont Street NW, Apt 10
Washington, D.C. 20009

              Plaintiffs,

    v.

WALTER REED NATIONAL MILITARY
MEDICAL CENTER
4494 North Palmer Road
Bethesda, MD 20889

and

JAMES NORMAN MATTIS, United States
Secretary of Defense, in his official capacity, and
UNITED STATES DEPARTMENT OF
DEFENSE
1400 Defense Pentagon
Washington, DC 20301

and

U.S. NAVY EXCHANGE SERVICE COMMAND
3280 Virginia Beach Blvd.,
Virginia Beach, VA 23452

              Defendants.

Case No._____

COMPLAINT

## COMPLAINT

Plaintiffs, by and through undersigned counsel, allege as follows:

**INTRODUCTION**

1.        This action seeks to redress a cruel irony:  Walter Reed National Military Medical Center ("WRNMMC"), a United States ("U.S.") government medical institution dedicated to meeting the needs of, *inter alia*, military personnel, veterans, and members of their families with often serious disabilities, and the adjacent Navy Exchange retail outlet ("Navy Exchange"), are not equipped to meet a basic need of those very patients – access to restrooms.  Specifically, WRNMMC and the U.S. Navy Exchange Service Command ("NEXCOM"), the federal agency that operates the Navy Exchange, do not provide accessible restroom facilities for individuals who use wheelchairs throughout Building 10 of the WRNMMC and the Navy Exchange.  This failure of these federal facilities to provide accessible restroom facilities in significant portions of the establishment violates federal law and U.S. Department of Defense ("DoD") Standards, as set forth below.

2.        WRNMMC is a U.S. military medical facility located in Bethesda, Maryland, that provides comprehensive services to active service members and veterans from all branches of the military, and to their families.  WRNMMC includes several medical buildings that provide inpatient and outpatient care.  The adjacent Navy Exchange facility is a shopping center that provides discounted merchandise for veterans and their dependents and families on which many rely for essential groceries and other goods.

3.        As facilities administered by the DoD, WRNMMC and the Navy Exchange are prohibited from discriminating against individuals solely on the basis of disability under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehab Act").

2

**LEGAL BACKGROUND**

4.     The Architectural Barriers Act of 1968 ("ABA"), 42 U.S.C. §§ 4151 *et seq*., requires that buildings constructed or leased by the federal government be accessible to individuals with disabilities.

5.     The ABA designated four agencies as standard-setting agencies, requiring each of them to establish and enforce standards for design, construction, and alteration of particular types of buildings and facilities.  42 U.S.C. §§ 4152-1454a.

6.     The DoD is one of the ABA-designated standard-setting agencies, 42 U.S.C. § 4154, and prescribes standards for DoD facilities binding under the ABA and Section 504 of the Rehab Act.

7.     In 1984, in conjunction with the Architectural and Transportation Barriers Compliance Board ("the Access Board"), the four standard-setting agencies adopted a set of standards for use by all federal agencies.  These standards are called the Uniform Federal Accessibility Standards ("UFAS").  UFAS provide "uniform standards for the design, construction, and alteration of buildings so that physically handicapped persons will have ready access to and use of them in accordance with the Architectural Barriers Act."  49 Fed. Reg. 31,528 (Aug. 7, 1984).

8.     On July 23, 2004, the Access Board issued updated accessibility guidelines for newly constructed, altered, and leased facilities covered by the ABA and Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq*., in order to reconcile differences between them and to establish a more consistent level of accessibility for facilities covered by both Acts.  These guidelines are codified at 36 C.F.R. part 1191.  *See* 60 Fed. Reg. 44,084 (Jul. 23, 2004).

9.      In a Memorandum dated October 31, 2008, DoD adopted these regulations as its own standards for determining compliance with the ABA and Section 504 of the Rehab Act ("DoD Standards").  DOD Memorandum - United States Access Board ("DoD Memorandum"), available at www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-aba-standards/background/dod-memorandum (last visited April 27, 2018).

10.     The DoD Memorandum specifies that all facilities designed, constructed (including additions), altered, leased, or funded by the DoD are to be made accessible to people with disabilities in accordance with the DoD standards.

11.     DoD Standards apply to all hospitals and facilities administered by the DoD for the care or rehabilitation of persons who are sick or injured, including WRNMMC, as well as to the Navy Exchange.

**LACK OF ACCESSIBLE RESTROOMS**

12.     WRNMMC does not provide accessible restroom facilities for individuals who use wheelchairs on the ground floor of Building 10 of WRNMMC.

13.     NEXCOM does not provide accessible restroom facilities for individuals who use wheelchairs in the Navy Exchange.

14.     Upon information and belief, restrooms throughout Building 10 of WRNMMC are inaccessible to persons in wheelchairs due to the same barriers, set forth below, that render those on the ground floor of Building 10 inaccessible.

15.     The lack of accessible restrooms prevents individuals who use wheelchairs, including Plaintiff Sylvester Fiers who receives medical services at WRNMMC and shops at the Navy Exchange at least three times a month, from fully using the facility, and forces such

4

individuals to curtail visits or alter routes to ensure they are able to find an accessible restroom as needed.

16.     Through ownership and funding of WRNMMC and the Navy Exchange, and control of their operations, Defendants are required to, and have the capacity and authority to, eliminate the accessibility barriers in WRNMMC and Navy Exchange restrooms to comply with the DoD Standards and Section 504 of the Rehab Act.

17.     Upon information and belief, as evidenced by testing done by Plaintiff Equal Rights Center ("ERC") and the experience of Plaintiff Fiers, Defendants have failed to eliminate the accessibility barriers or otherwise provide accessible restrooms at WRNMMC and the Navy Exchange for Plaintiff Fiers and other persons with disabilities, despite having knowledge that the facilities do not comply with applicable DoD Standards.

18.     By failing to comply with the DoD standards, Defendants have violated and continue to violate Section 504 of the Rehab Act.

19.     Plaintiffs seek an injunction requiring Defendants to immediately bring WRNMMC and Navy Exchange restroom facilities into compliance with applicable DoD Standards, and to ensure that all persons with disabilities can fully participate in and be granted the benefits of all WRNMMC and Navy Exchange programs and activities, including the use of restroom facilities, to comply with Section 504 of the Rehab Act.

## PARTIES

20.     Plaintiff Fiers is a military dependent who receives medical care at WRNMMC and shops at the Navy Exchange.  As a dependent of a member of a uniform service, Plaintiff Fiers is entitled to receive medical care in facilities of the uniformed services, subject to the availability of space and facilities and the capabilities of the medical staff.  10 U.S.C. § 1076.

21.     Mr. Fiers' father was an active duty member of the military service and died during his active duty.  Thus, Mr. Fiers' father meets the definition of a "member" of the uniform service under 10 U.S.C. § 1076(a)(2)(A), and Mr. Fiers is a dependent of such a member.

22.     Plaintiff Fiers is an individual with a disability, as defined in 29 U.S.C. § 705(20). He has physical impairments that substantially limit one or more major life activities, including walking.  He has been diagnosed as a T12 paraplegic.  He uses a manual wheelchair for mobility.

23.     Plaintiff Fiers receives general medical care and other specialized services at WRNMMC, and will continue to rely on WRNMMC for his medical care and related services. His primary care doctor is located at WRNMMC.  Mr. Fiers also does most of his non-perishable shopping at the Navy Exchange.

24.     Plaintiff ERC is a non-profit corporation headquartered in Washington, D.C. Pursuant to its mission, ERC identifies and seeks to eliminate unlawful and unfair discrimination in a variety of areas, including public accommodations, on behalf of individuals with disabilities and others in D.C. and throughout the nation.  To advance its mission, ERC engages in education and outreach within the D.C. community, provides counseling to individuals facing discrimination, works with local and federal officials to enhance disability rights laws and their enforcement, undertakes investigations to uncover unlawful discrimination, and, when necessary, initiates litigation.

25.     ERC is a membership organization with more than 8,000 members.  Many of these members, including Plaintiff Fiers, are individuals with disabilities, including wheelchair users directly affected by the discriminatory practices described in this complaint.

26.     ERC members include "otherwise qualified" individuals with disabilities within the meaning of Section 504 of the Rehab Act.

27.     Plaintiff Fiers is a member of the ERC.

28.     Defendant WRNMMC is a United States military medical center as defined in 10 U.S.C. § 1073d(b).  Defendant WRNMMC is owned, operated, and administered by the DoD, which is an agency of the U.S. within the meaning of 28 U.S.C. § 1391(e).

29.     Upon information and belief, WRNMMC is licensed to do business and conducts business in Montgomery County in the State of Maryland.

30.     Under 10 U.S.C. § 1703d, WRNMMC is required to include "(A)  Inpatient and outpatient tertiary care facilities that incorporate specialty and subspecialty care, (B)  Graduate medical education programs, (C) Residency training programs, [and] (D)  Level one or level two trauma care capabilities."

31.     Defendant NEXCOM is a Department of the Navy organization, also within the DoD, that conducts its operations as a federal non-appropriated funded instrumentality. NEXCOM operates several business lines specifically for service members, veterans, and their families, including retail stores located on military bases.

32. The Navy Exchange on the WRNMMC campus is a NEXCOM-operated retail outlet that consists of a shopping mall that provides goods at a discounted rate for veterans and their families, and a food court.  NEXCOM is a separate DoD entity from the WRNMMC.

32.     Defendant James Norman Mattis is the U.S. Secretary of Defense.  The DoD owns, operates, and provides funding for WRNMMC and the Navy Exchange.  In his capacity as Secretary of Defense, Defendant Mattis is required to maintain military medical facilities in areas where there are large populations of military members and their dependents, pursuant to 10 U.S.C. § 1703d.  Defendant Mattis is sued in his official capacity.

## JURISDICTION AND VENUE

33.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28

U.S.C. §§ 1343(a)(4), as the claims arise under a federal Civil Rights law, Section 504 of the

Rehab Act.

34.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1)(B), as

Defendants include individuals and agencies acting under the color of legal authority and a

substantial part of the omissions giving rise to the claim occurred at WRNMMC and the Navy

Exchange, which are located in Maryland.

## FACTS

### Inaccessible Restrooms at WRNMMC

35.     Plaintiff Fiers receives his primary medical care and other specialized care at

WRNMMC.  He visits the facilities at WRNMMC at least three times a month for that care and

to purchase goods at the Navy Exchange.

36.     Because Plaintiff Fiers frequently spends lengthy periods of time at WRNMMC,

he must use the restrooms on various floors of Building 10 of WRNMMC and in the Navy

Exchange areas.

37.     However, restrooms in Building 10 of WRNMMC and throughout the Navy

Exchange are inaccessible to Plaintiff Fiers.

*Ground Floor Restroom (Entrance)*

38.     The ground floor entrance to the restroom of Building 10 lacks the minimum

amount of depth required behind the swinging restroom door to accommodate wheelchair access.

The lack of required depth behind the restroom door constrains the ability of Plaintiff Fiers and

others who use a wheelchair to maneuver and requires them to execute a series of cumbersome and potentially unsafe turns to use the restroom facilities.

39.     By not providing the minimum amount of depth required behind the swinging restroom door for adequate wheelchair access, WRNMMC is violating Section 4.13.6 of the DoD Standards.

40.     The pressure required to open the swinging restroom door is approximately 9.5 lbs., which is more than the maximum force of 5 lbs. specified in the DoD Standards, making it difficult for someone in a wheelchair to push or pull open.

41.     By having a swinging restroom door that requires more than the specified maximum force to open, WRNMMC is violating Section 4.13.11(2)(b) of the DoD standards.

42.     The drain and hot water pipes in the ground floor WRNMMC Building 10 entrance restroom are improperly insulated and pose a danger to Plaintiff Fiers and others who use a wheelchair, who can easily be burned when encountering them.

43.     WRNMMC's failure to properly insulate the drain and hot water pipes violates Sections 4.22.6 and 4.19.4 of the DoD Standards.

44.     The soap, paper towel, and sanitary seat cover dispensers are out of reach in the WRNMMC Building 10 entrance restroom for Plaintiff Fiers and others who use a wheelchair, preventing them from accessing basic sanitation.

45.     Failure to install accessible soap, paper towel, and sanitary seat cover dispensers violates Sections 4.22.7, 4.27, and 4.2.5-6 of the DoD Standards.

46.     The door opening width of the stall purporting to be accessible in the WRNMMC Building 10 entrance restroom (but is really only an alternate stall for those who are ambulatory but need mobility support) is not at least 32 inches, the stall is not at least 56 inches deep and 60

inches wide, and no back grab bars are installed, preventing Plaintiff Fiers and others who use a wheelchair from accessing and safely using the stall.

47.     Failure to provide an adequate door opening width, adequate depth and width of the accessible restroom stall, and grab bars is in violation of Sections 4.17.5, 4.13, 4.17.3, 4.17.6, and A4.26.2 of the DoD Standards.

48.     The bottom edge of the mirror in the WRNMMC Building 10 entrance restroom is higher than the required 40 inches above the floor, making it too high for Plaintiff Fiers and others who use a wheelchair to use the mirror effectively.

49.     By failing to have a mirror no higher than 40 inches above the floor, WRNMMC is in violation of sections 4.22.6 and 4.19.6 of the DoD standards.

50.     The purportedly accessible toilet in this restroom fails to have a centerline 18 inches from the closest side wall.  The 18-inch requirement is to enable wheelchair users like Plaintiff Fiers to safely and effectively use the grab bar to transfer to the toilet.  Moreover, the flush control is not located on the clear space side of the toilet, preventing access to the mechanism and posing a risk of tipping for a wheelchair user who must lean far over the toilet to reach the flush control.

51.     By failing to provide centered toilets and accessible flush controls, WRNMMC is violating Sections 4.16.2-3 and 4.16.5 of the DoD standards.

52.     In the purportedly accessible stall, the top of the side grab bar is not mounted between 33 inches and 36 inches above the floor and the grab bar is not located in the appropriate place, posing a safety threat to Plaintiff Fiers and others who use a wheelchair who would not be able to easily grab the bar for support.

53.     By failing to provide appropriately mounted and situated grab bars in the toilet stalls, WRNMMC is violating sections 4.17.5, 4.13, 4.17.3, 4.17.6, and 4.26.2 of the DoD standards.

*Ground Floor Restroom (Hallway)*

54.     In the ground floor hallway restroom between the entrance and waiting room of Building 10, the latch side clearance of both the pull and push sides of the swinging entrance door, and the depth behind the door, is not sufficient, preventing Plaintiff Fiers and others who use a wheelchair from fitting through the door.

55.     Failure to provide sufficient clearance for entry and exit to and from a restroom violates Section 4.13.6 of the DoD Standards.

56.     The pressure required to open the swinging restroom door is approximately 9 lbs., which is more than the allotted maximum force of 5 lbs., making it difficult for someone in a wheelchair to push or pull open, in violation of Section 4.13.11(2)(b) of the DoD Standards.

57.     The drain and hot water pipes in the WRNMMC Building 10 hallway restroom are improperly insulated, posing a danger to Plaintiff Fiers and others who use a wheelchair, in violation of Sections 4.22.6 and 4.19.4 of the DoD Standards.

58.     The sanitary seat covers in the WRNMMC Building 10 hallway restroom are out of reach for Plaintiff Fiers and others who use a wheelchair, in violation of Sections 4.22.7, 4.27 and 4.2.5-6 of the DoD Standards.

59.     The bottom edge of the mirror in the WRNMMC Building 10 hallway restroom is higher than 40 inches above the ground, making it too high for Plaintiff Fiers and others who use a wheelchair to access, in violation of Sections 4.22.6, 4.19.6 of the DoD Standards.

60.     In the stall that purports to be accessible, the top of the side grab bar is not mounted between 33 inches and 36 inches above the floor, the top of the back grab bar is not mounted between 33 inches and 36 inches above the floor, and the back grab bar is not located in the appropriate place, in violation of Sections 4.17.5, 4.13, 4.17.3, 4.17.6, 4.26.2 of the DoD standards.  Plaintiff Fiers and others who use a wheelchair are thus unable to safely hold onto the grab bars.

*Ground Floor Restroom (Ultrasound/Radiology)*

61.     The swinging door of the Ultrasound/Radiology department ground floor restroom in Building 10 has a door pressure of approximately 14.55 lbs., which is more than the allotted maximum force of 5 lbs., making it difficult for someone in a wheelchair to push or pull open, in violation of Section 4.13.11(2)(b) of the DoD Standards.

62.     In the Ultrasound/Radiology Department's ground floor restroom, the paper towel dispensers are out of reach for Plaintiff Fiers and others who use a wheelchair, in violation of Sections 4.22.7, 4.27 and 4.2.5-6 of the DoD Standards.

63.     The centerline of the toilet in the ground floor waiting room restroom of Building 10 is not 18 inches from the closest side wall, making it difficult for Plaintiff Fiers and others who use a wheelchair to access, in violation of Sections 4.16.2-3 and 4.16.5 of the DoD Standards.

*The Navy Exchange Restrooms*

64.     The restrooms in the Navy Exchange have a substantially uniform design; thus all have the same restrictions on accessibility for wheelchair users.

65.     In the Navy Exchange food court, first floor, and second floor restrooms, the bottom of the apron (the ledge of the sink) is not at least 29 inches above the floor and 8 inches

back from the edge of the sink, and knee space is less than 27 inches high, preventing Plaintiff Fiers and others who use a wheelchair from being able to access the sink.

66.     This failure to provide sufficient knee space below the sink violates sections 4.22.6, and 4.19.2-4 of the DoD Standards.

67.      In the Navy Exchange second floor restroom, the depth behind the pull side of the swinging door is not sufficient, preventing Plaintiff Fiers and others who use a wheelchair from fully opening the door and fitting through the entrance, in violation of Section 4.13.6 of the DoD Standards.

68.     The pressure required to open the swinging restroom door is approximately 7 lbs., which is more than the allotted maximum force of 5 lbs., making it difficult for someone in a wheelchair to push or pull open, in violation of Section 4.13.11(2)(b) of the DoD Standards.

69.     The bottom edge of the mirror in the Navy Exchange second floor restroom is higher than 40 inches above the ground, making it difficult for Plaintiff Fiers and others who use a wheelchair to access, in violation of Sections 4.22.6 and 4.19.6 of the DoD Standards.

70.     As a result of the accessibility barriers set forth in paragraphs 38 – 69, *supra*, Plaintiff Fiers and other persons who use wheelchairs are denied full use and enjoyment of the WRNMMC and Navy Exchange restroom facilities solely due to their disability, in violation of Section 504 of the Rehab Act.

**The ERC's Injury and Investigation**

71.     ERC has suffered injuries by virtue of the injuries suffered by its members.

72.     ERC has also suffered injuries from Defendants' discriminatory practices that are independent of the injuries suffered by ERC's members.

73.     Defendants' discriminatory practices and policies have frustrated and continue to frustrate ERC's mission of promoting the civil rights of people with disabilities and ensuring that they have the same choices and opportunities (including access to public accommodations and medical care) as people without disabilities.

74.     ERC works to promote access to public accommodations for individuals with disabilities.  Defendants' discriminatory actions have frustrated, and continue to frustrate, those efforts by denying equal access to wheelchair users, and preventing wheelchair users from fully accessing and enjoying the benefits of federal facilities, including those upon which they rely to meet their basic medical needs.

75.     The ERC first became aware of Defendants' discriminatory conduct when it was informed by Plaintiff Fiers in the course of the ERC's regular consultation with ERC members who are wheelchair users.  As a result of Defendants' actions, ERC has expended considerable time and resources to investigate, analyze and counteract the effects of Defendants' discriminatory conduct and serve its members.

76.     ERC spent significant time investigating the extent of the inaccessibility of the restrooms at WRNMMC and the Navy Exchange in order to determine whether the barriers experienced by Plaintiff Fiers violated DoD Standards.  ERC conducted tests of the restrooms on the ground floor of WRNMMC Building 10 and of the first and second floors of the Navy Exchange.

77.     ERC also spent considerable time and effort to study the DoD standards in order to test the restrooms.

78.     The ERC found each of the restrooms discussed above in paragraphs 38 - 70 to be non-compliant with the DoD Standards.

14

79.     Upon information and belief, the inaccessible restrooms discussed above in paragraphs 38 - 70 are representative of all restrooms at WRNMMC Building 10 and the Navy Exchange.

80.     Were it not for Defendants' discriminatory practices and policies, the ERC would not have undertaken these investigatory efforts at WRNMMC and the Navy Exchange.

81.     The ERC informed Defendants about the inaccessible restrooms.  On September 9, 2016, the ERC sent a letter to the Director of Patient Relations and Customer Advocacy, and to Colonel Michael S. Heimall, in his official capacity as (now former) Director of WRNMMC, notifying them of the ERC's findings and of Plaintiff Fiers' complaints regarding the inaccessibility of restrooms at WRNMMC.

82.     The ERC did not receive a response to the September 9, 2016 letter from the WRNMMC.

83.     On December 13, 2017, the ERC sent a second letter to WRNMMC and NEXCOM regarding the inaccessible restrooms.  The December 13 letter was sent to Captain Mark A. Kobelja, Director, and John R. Rotruck, Chief of Staff, WRNMMC, the WRNMMC Patients' Relation Office, the WRNMMC Inspector General, and NEXCOM.

84.     On January 10, 2018, counsel for WRNMMC responded to ERC's second letter via telephone.  Counsel for WRNMMC and ERC held a conference call on February 6, 2018 to discuss the issues identified in this Complaint.  During that call, ERC was promised additional information regarding ongoing and planned renovations to WRNMMC and the Navy Exchange, including timetables and scopes of work, within 2-3 weeks.  Counsel for WRNMMC also agreed to serve as a liaison between ERC and NEXCOM regarding corresponding Navy Exchange facility work.

85.     ERC subsequently placed unanswered telephone calls and sent email correspondence to WRNMMC requesting the overdue information.  On March 3, 2018, counsel for WRNMMC responded that a formal response was forthcoming.  On March 5, 2018, WRNMMC sent a two-page letter to ERC summarily describing future plans to contract for the renovation of the WRNMMC and Navy Exchange facilities.  Counsel for WRNMMC and ERC held a follow-up call on April 4, wherein ERC explained that the WRNMMC letter did not contain the detailed information WRNMMC promised to provide on the February 6, 2018 call, and was generally inadequate to address the concerns raised in this Complaint.

86.     On April 6, 2018, ERC sent a letter to WRNMMC and NEXCOM proposing a resolution to the issues identified in the Complaint that would avoid litigation.

87.     On April 16, 2018, WRNMMC sent a letter to ERC summarily providing additional WRNMMC information and stating that WRNMMC was no longer able to provide information regarding NEXCOM.  WRNMMC's letter did not accept ERC's proposal for a joint negotiated resolution.

88.     Despite that ERC sent its December 13, 2017 letter to NEXCOM and included NEXCOM on all of the written correspondence described above, NEXCOM has provided no response to ERC.

89.     The ERC's diversion of resources to investigate, to notify WRNMMC and NEXCOM, to engage WRNMMC and NEXCOM in cooperative settlement discussions, and to otherwise counteract Defendants' discriminatory conduct, have forced the ERC to postpone or abandon other planned projects and services on which it would otherwise focus.  This diversion of resources has caused and continues to cause the ERC to suffer concrete and demonstrable injuries.

90.     Defendants' unlawful and discriminatory policies are ongoing.  Until remedied, they will continue to injure the ERC and its members by diverting the ERC's resources and frustrating its mission.

## CLAIM FOR RELIEF

### Violation of Section 504 of the Rehab Act and Implementing Regulations

91.     Each of the allegations in paragraphs 1 to 90 above is re-alleged and incorporated as if fully set forth herein.

92.     At all times relevant to this action, Section 504 of the Rehab Act and the DoD standards were in full force and effect and applied to WRNMMC and NEXCOM, their facilities, offices, and funded and managed programs, including, but not limited to, WRNMMC Building 10 and the Navy Exchange facilities.

93.     At all times relevant to this action, the United States Access Board's regulations at 36 C.F.R. part 1191, which were adopted by DoD on October 31, 2008, and which "establish[] accessibility requirements under Section 504 of the Rehab Act," were in full force and effect and applied to WRNMMC Building 10 and the Navy Exchange facilities.

94.     Section 504 of the Rehab Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."  29 U.S.C. § 794 (as amended).

95.     Defendant DoD is an Executive Agency for the purposes of Section 504 of the Rehab Act.  WRNMMC and the Navy Exchange each is funded, operated, and administered by

the DoD and therefore are each a "program or activity conducted by an Executive agency" for the purposes of Section 504 of the Rehab Act, and subject to that Act's purview.

96.     Thus, denial of equal access to restrooms at WRNMMC and the Navy Exchange constitutes exclusion from participation in, denying the benefits of, or discrimination under a "program or activity" conducted by DoD.

97.     Section 504 of the Rehab Act provides for injunctive relief and compensatory damages for discrimination against an "otherwise qualified" individual with a disability, as defined in 29 U.S.C. § 705.

98.     Plaintiff Fiers is an "otherwise qualified" individual with a disability who has been subjected to discrimination by an agency of the United States, WRNMMC, and NEXCOM, in the form of inaccessible restrooms at WRNMMC and the Navy Exchange.

99.     Plaintiff Fiers receives medical services at WRNMMC and shops at the Navy Exchange.

100.     At all times relevant to this action, Plaintiff Fiers has had physical impairments that require him to use a wheelchair, and Plaintiff Fiers' need for a wheelchair is the sole reason for his inability to access and use WRNMMC's and Navy Exchange restroom facilities.

101.     The ERC notified WRNMMC and NEXCOM of accessibility barriers to its restrooms for wheelchair users; yet WRNMMC and NEXCOM have failed to remedy these deficiencies.

102.     Providing accessibility for persons with disabilities to WRNMMC and Navy Exchange restrooms is a reasonable accommodation.

103.     Through ownership of facilities and control of operations, Defendants have the capacity and authority to eliminate the accessibility barriers in WRNMMC and Navy Exchange restroom facilities to comply with the Rehab Act and applicable DoD accessibility standards.

104.     Yet, Defendants have failed to eliminate such barriers or otherwise provide for the accessibility of persons with disabilities to WRNMMC and Navy Exchange restrooms, or bring their facilities into compliance with applicable DoD standards, despite having knowledge of such deficiencies.

105.     Defendants' violative conduct is ongoing.

106.     Defendants have violated, and continue to violate, Section 504 of the Rehab Act by discriminating against and failing to provide reasonable accommodation to Plaintiff Fiers and other wheelchair users by preventing them, solely on the basis of their disability, from accessing restroom facilities that nondisabled visitors enjoy, due to the restrooms' failure to comply with the DoD standards.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

107.     Declare that Defendants' failure to make restroom facilities throughout the WRNMMC, including, but not limited to, Building 10 of the WRNMMC, and the Navy Exchange, accessible to individuals who use wheelchairs in violation of applicable DoD standards violates Section 504 of the Rehab Act;

108.     Enter a permanent injunction requiring Defendants, their successors in office, agents, assigns, representatives, employees, and all persons acting in concert therewith, to immediately and expeditiously modify WRNMMC and Navy Exchange restroom facilities to

provide full access to all persons with disabilities, particularly those who use wheelchairs, in full compliance with applicable DoD Standards;

109.    Enter judgment awarding Plaintiffs compensatory damages in an amount to be determined;

110.    Award Plaintiffs and their attorneys reasonable attorneys' fees and costs; and

111.    Grant such further relief at law or in equity as the Court deems just and proper.

Respectfully submitted,


_____/s/_____

Eric L. Klein (MD bar No. 29195)
James M. Auslander (*pro hac vice pending*)
John G. Cossa (*pro hac vice pending*)
BEVERIDGE & DIAMOND, P.C.
1350 I Street, N.W., Suite 700
Washington, D.C. 20005-3311
(202) 789-6016
(202) 789-6190 (fax)
eklein@bdlaw.com
jauslander@bdlaw.com
jcossa@bdlaw.com


_____/s/_____

Hannah E.M. Lieberman (MD bar No. 05456)
Deepinder Goraya (*pro hac vice pending*)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, D.C. 20036
(202) 319-1000
(202) 319-1010 (fax)
Hannah_lieberman@washlaw.org
deepa_goraya@washlaw.org

*Attorneys for Plaintiffs*

20